## COMMONWEALTH v. W. L. BRINTON.

132        69
19 SC ⁴285

APPEAL BY DEFENDANT FROM THE COURT OF COMMON
PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 16, 1890—Decided January 27, 1890.
[To be reported.]

1. Under the act of April 2, 1830, P. L. 147, based upon the acts of March 30, 1784, 2 Sm. L. 99, and March 28, 1799, 3 Sm. L. 359, the hawking or peddling of goods, wares or merchandise in Philadelphia, with or without a license, is prohibited under a penalty of $50, saving to *citizens* the right so to sell goods, etc., of their own growth, product or manufacture.*

2. When there is evidence that the defendant was found engaged in selling goods, wares and merchandise, as a hawker or peddler, within a prohibited district, the burden of proof is then upon him to show the special circumstances which gave him a right to sell goods in such manner, notwithstanding the general prohibition.

3. The words, "foreign goods, wares and merchandise," so frequently employed in the several statutes relating to hawking or peddling, mean all goods not the "growth, product or manufacture of this state;" these classes are constantly set over against each other, and there is no room for a third class: Hart v. Willetts, 62 Pa. 15; doubted: per Justice WILLIAMS.

4. These statutes, with such restrictive provisions upon the sale of goods, wares and merchandise by hawking and peddling, are not unconstitutional, but are the proper exercise of a police power for the protection of society from the lawless able-bodied wanderer, whose presence in any community is a source of apprehension.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 96 July Term 1889, Sup. Ct.; court below, No. 817 December Term 1885, C. P. No. 1.

On December 22, 1885, in a qui tam action before a magistrate in the name of the commonwealth, ex relatione Henry Levy, against William L. Brinton, wherein was claimed " $50 Penalty for Peadling without a License on an Act of Assembly April 2, 1830," judgment was entered for the plaintiff for $50 and costs. From this judgment the defendant took an appeal to the Court of Common Pleas. Issue.

*See list of local statutes, note to Weise v. Keill, 2 Pa. C. C. R. 236.

At the trial on December 31, 1888, it was shown by a witness that he had bought leather goods from the defendant, " back of Girard College," in November and also in December, 1885 ; the defendant had a horse and wagon from which he sold, and he did not sell by public auction or outcry. It was admitted that in 1885, the defendant had no license to peddle under the act of April 2, 1830, P. L. 147. The plaintiff then rested. Thereupon, counsel for the defendant moved that a nonsuit be entered. The court, BREGY, J., refused defendant's motion, and, defendant offering no evidence, instructed the jury to find a verdict for the plaintiff for the penalty.

The jury rendered a verdict for the plaintiff for $50. A rule for a new trial having been discharged, judgment was entered, when the defendant took this appeal, assigning the instruction of the court to find a verdict for the plaintiff as error.

*Mr. J. Peter Klinges* (with him *Mr. Moses Stevenson*), for the appellant:

1. It is conceded that the defendant did not dispose of his goods by public auction or outcry, which is the only thing prohibited by § 2, act of April 2, 1830, P. L. 147. Being a penal statute, the act must be construed strictly : Potter's Dwarris, 254 ; Gallagher v. Neal, 3 P. & W. 183 ; and therefore, that the defendant, without license, sold leather goods within the city of Philadelphia, is not an offence under the first section of said act, for that section prohibits only the vending of merchandise, i. e., peddling within said city, by licensed persons.

2. The act of 1830 is in conflict with § 3, article III. of the constitution, prohibiting grants of special or exclusive privileges or immunities. By far the greater part of the people are thus shut out from earning a livelihood, and this defendant is among the number. It makes no difference how law-abiding or otherwise deserving he may be, he must be denied the right to engage in a useful and innocent occupation. Extraordinary restrictions upon a trade liable to become dangerous or injurious to the community, such as the liquor traffic, etc., are not oppressive, but when applied to an innocent and useful occupation, they are : Cooley on Torts, 277 ; Godcharles v. Wigeman, 113 Pa. 437 ; Peddler's License, 22 W. N. 35.

Opinion of the Court.

3. Finally, the testimony given upon the trial was not suffi-cient to convict the defendant, inasmuch as nothing appeared upon the evidence that he sold goods which were not of his own manufacture. This was essential, and the absence of such evi-dence forms a fatal defect in the case against him. Nothing is to be presumed against him.

*Mr. De Forrest Ballou,* for the appellee:

1. It has been the policy of the commonwealth from a very early time to restrict peddling within her territory. Peddling is the most primitive manner known in merchandising, and fades away before civilization and the establishment of perma-nent towns and cities. The act of 1830 permits peddling in the rural parts, but absolutely prohibits it in Philadelphia. There-fore, so far as that city is concerned, the act does not discrimi-nate as to persons or classes of persons.

2. Under the act, merchants are protected who have invested their money in merchandising, and would always be at a disad-vantage with peddlers, who are necessarily under small expense, as compared with a store-keeper; besides, the public in general are protected from the annoyance which must necessarily fol-low from an army of itinerant vendors continually pressing their wares upon you. And the act is constitutional: Biddle v. Commonwealth, 13 S. & R. 405; Commonwealth v. Willis, 14 S. & R. 398; Fisher v. Patterson, 13 Pa. 336; Common-wealth v. Wilson, 9 W. N. 291.

3. That the goods sold by the defendant were of his own manufacture, was a matter of defence to be shown by himself. The plaintiff proved all he was called upon to do to entitle him to a verdict, to wit: that the defendant had been peddling from his wagon in the city of Philadelphia, and had sold goods therefrom to the witness and others.

OPINION, MR. JUSTICE WILLIAMS:

This was an action for the recovery of a penalty of $50, for peddling in the city of Philadelphia without a license. The first question for consideration is, whether such a penalty is imposed by the acts of assembly relating to this subject; and this question has been discussed on both sides as though it de-pended wholly on the act of April 2, 1830. This is not the

case. Our legislation on this subject may be said to begin with the act of March 30, 1784, which quaintly asserts that " many idle and vagrant persons may come into this state, and, under pretense of being hawkers or pedlars, may greatly impose upon many persons, . . . . and also may commit felonies and other misdemeanors," and which then proceeds to declare, by way of remedy, that "no person whatever shall follow, or employ him or her or themselves in the business or employment of a hawker or pedlar " until after he shall have procured a license authorizing him so to do, under a penalty of ten pounds. A proviso, however, saves the right of any person to peddle " goods, wares, or merchandise being of the growth, product, or manufacture of this state."

Next in order is the act of March 28, 1799, which restricts the granting of a license to citizens of the United States who are disabled from procuring a livelihood by labor, and provides the manner in which proof of physical disability shall be made. In the second section it changes the penalty for peddling without a license from ten pounds to fifty dollars. In the third section it declares that " no person licensed for the purpose aforesaid, shall be permitted to sell, vend, or expose for sale, any foreign goods, wares or merchandise, in any private or public house, or in any of the open streets, lanes, or alleys, or in any other part or place of the city of Philadelphia, the district of Southwark, or the townships of the Northern Liberties, Moyamensing, or Passyunk," under a penalty of fifty dollars. After the passage of this act, peddling within the city of Philadelphia, and the other municipalities named, was prohibited absolutely, and the possession of a license did not confer any privilege upon, or serve to protect in any manner, the holder, so far as the excepted districts were concerned, saving only the right to vend articles " the growth, produce, or manufacture of this state."

This was the state of the law when the act of April 2, 1830, was passed; but, by an omission of the compiler, neither the act of 1784, nor that of 1799 is to be found in Purdon's Digest. Looking now at the act of 1830, we find that the first section revises and regulates the manner in which a license is to be applied for, fixes the price of the several kinds of license authorized, and by proviso brings forward the restrictive clause

in the act of 1799, relating to the city of Philadelphia and its vicinity, which forbids licensed persons to sell any " foreign or domestic goods, wares, or merchandise, in any private or public house, or in any of the open streets, lanes, or alleys, or in any other part or place of the city of Philadelphia, the district of Southwark, or the townships of the Northern Liberties, Moyamensing, and Passyunk, under the penalty of fifty dollars." In the second section, the proviso appears saving to the citizens of the commonwealth the right to sell goods, wares, and merchandise of their own manufacture. The act of 1830 supplies only such portions of the act of 1799 as relate to the procuring of licenses, and their classification, leaving those portions which prohibit peddling by an unlicensed person wholly untouched. In 1840, the legislature, out of abundant caution, reenacted the prohibitory clause of the act of 1799, and affixed the same penalty of $50 for its violation, but with the same proviso, " that this act shall not be construed to prevent citizens of this commonwealth from hawking and peddling goods of their own manufacture : " [Act of April 16, 1840, P. L. 433.]

From this review of the statutes, it is very clear that the act of peddling in the city of Philadelphia, whether with or without a license, is forbidden, and that the penalty of fifty dollars is affixed to the act whether the peddler has or has not a license. The argument of the appellant, based on the idea that the act of 1830 contained the only restrictive provisions to be found on the statute-book, fails because its foundation fails.

The only other question discussed by the appellant is that of the constitutionality of the legislation requiring a license, and forbidding unlicensed persons to peddle. Especially is it urged that the discrimination in favor of those under physical disability is unauthorized, unjust, and oppressive. While the argument of the appellant on this subject is ingenious, and shows research and learning, we do not regard the subject as fairly debatable. The recital in the earlier acts shows, by the express declaration of the law-makers, what is quite apparent from the nature of the several provisions they contain, that the purpose of the legislation was the protection of society from the lawless, able-bodied wanderer, whose presence is a source of apprehension in any community. To refuse a license, which

would serve as an excuse for visiting private houses and securing access thereto, to the able-bodied stranger, was an exercise of police power, as clearly as the laws regulating the granting of liquor licenses or the sale of fire-arms.

It has been suggested that there is some question about the burden of proof in this case. The acts of 1784 and 1799 distinctly forbade the act of peddling without a license, and those of 1799 and 1830 forbade peddling in the city of Philadelphia by licensed peddlers; but the proviso runs through them all that saves a citizen who sells goods of his own manufacture, or the growth, product, or manufacture of this state. The defendant was found peddling manufactured goods in the city of Philadelphia. He admits that he had no license. He knows, and can readily show, whether the goods were of his own manufacture, or were the growth, product, or manufacture of this state. The facts were peculiarly within his knowledge, and were not within the knowledge of the plaintiff. We think, therefore, that, where proof was made that the defendant was found engaged in selling goods, wares, and merchandise, as a peddler, within the limits of the city of Philadelphia, it became his duty to show the special circumstances which gave him a right to peddle, notwithstanding the general prohibition. If a license conferred that right, it was his duty to prove that he held a license. If his right rested on the fact that he was the manufacturer of the goods that he was offering for sale, it was incumbent on him to show the fact: 1 Greenl. Ev. 105. Even in prosecutions resting on a statute in which a negative clause is part of the description of the offence, a prima facie showing is all that is required of the prosecution. As if a statute forbade a peddler to vend goods not made in the county; here the offence consists, not in peddling goods generally, but in selling goods of a particular character; yet plenary proof of the negative is not required, but upon a prima facie showing the defendant must take up the burden of proof, because the facts are within his knowledge. Where, however, the act may not be lawfully done without a license, or without the existence of some fact which equally with the possession of a license relieves against the prohibition of the statute, the fact being practically within the knowledge of the defendant, the burden of showing its existence is on him. In such a case proof of the act forbid-

Opinion of the Court.

den makes a case against the defendant, and the exculpatory fact must be shown by him, or judgment will go against him: 1 Greenl. Ev. 106. The act of 1784 makes it unlawful for any person "to employ him, her, or themselves in the business or employment of a hawker or peddler" without a license. The act of 1799 and that of 1830 provide that, as to the city of Philadelphia, a license shall confer no right to pursue the business of peddling. The only fact that can relieve a defendant from the penalty for engaging in the business of peddling in this city is, that he is the manufacturer of the goods he sells, or, at most, that they are the growth, product, or manufacture of the state. This is a fact that is peculiarly within his knowledge, and the burden of showing it is on him.

It is not necessary to the decision of this case, but I cannot forbear saying, speaking, however, only for myself, that a careful review of the several statutes relating to this subject has satisfied me that the words "foreign goods, wares, and merchandise," so frequently employed in them, mean all goods not the "growth, product, or manufacture of this state." These classes are constantly set over against each other; and there is no room for a third class, embracing goods made in other states of the Union. In all these statutes the prohibited goods are "foreign goods." Those not prohibited are the growth, product, or manufacture of this state. For the one class a license must be obtained; for the other, none is required. The line is drawn clearly and unmistakably between the products of the state, on the one side, and all outside of the state, on the other. It is probable that Hart v. Willetts, 62 Pa. 15, was decided without an examination of the acts of 1784 and 1799; and a careful consideration of this question, when it becomes necessary to decide it, may result in the adoption of the view now suggested.

The judgment is affirmed.