## Sayre Borough, Appellant, *v.* Phillips.

[Marked to be reported.]

*Municipalities—Boroughs—Police power.*

By the organization of a city or borough within its borders, the state imparts to its creature, the municipality, the powers necessary to the performance of its functions and to the protection of its citizens in their persons or property. The police power is one of these. Ordinances of cities and boroughs passed in the legitimate exercise of this power are therefore valid.

*Peddling—Municipal control—License—Police regulation.*

The business of peddling has been treated as a proper subject for police regulation and control in this state since 1784. Such regulation is an exercise of the police power, and as such is within the scope of municipal control.

Such regulation must be directed against the business or practice of peddling, and not against some of the persons who may be engaged in it. If a statute or municipal ordinance is so framed as to discriminate between the persons engaged in the same trade or pursuit, such statute or ordinance is not a police but a trade regulation, and therefore invalid.

An ordinance of the borough of Sayre prohibited all persons from engaging in the business of peddling, or selling goods from house to house, by sample or otherwise, without a borough license, and fixed the price of such license at a figure evidently intended to be prohibitive. By a proviso all residents of the borough of Sayre were exempted from the operation of the ordinance:

*Held,* That such an ordinance was invalid.

*Constitutional law—Citizens of different states—Interstate commerce— Constitution of the United States, article IV, section 2; article I, section 8.*

An ordinance that should prohibit all persons peddling goods manufactured or produced in other states, and permit the same persons to peddle goods of the same character manufactured or produced in this state, or which should prohibit nonresidents from engaging in such a business while leaving residents free to engage therein, would be void, because in violation of the constitution of the United States.

Warren Borough v. Geer, 117 Pa. 207, distinguished.

Argued March 17, 1892.   Appeal, No. 286, Jan. T., 1892, by plaintiff, from judgment of C. P. Bradford Co., Sept. T., 1891, No. 799, on verdict for defendant, Harry Phillips.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Action to recover penalty for violation of borough ordinance.

The facts appear by the charge of the court below, PECK, P. J., which was as follows:

" You have been sworn in the case of the Borough of Sayre against Harry Phillips; an action brought by the borough of Sayre against this defendant for the purpose of collecting a fine or penalty growing out of an ordinance passed by the borough on the 13th of July, 1891, known as ordinance number 28.

" The evidence in the case shows that this defendant between the 6th and the 25th of August; between the time this ordinance went into effect and the day he was arrested, took orders in the borough of Sayre to be filled at Waverly in the state of New York, and on the following day he delivered the goods, which had been ordered the day previous: That this defendant is in the employ of T. S. Walker & Son, and was their agent for the purpose of obtaining orders, and delivering these goods.

" I think there is no evidence in this case of the distance between Waverly and the borough of Sayre.

" It is contended on the part of the plaintiff that this was in direct violation of the ordinance of the 13th of July, 1891; and if this ordinance is legal, we would be disposed to instruct you that this defendant had violated the provisions of this ordinance; because he admits upon the stand that he took orders, and delivered the goods in pursuance of these orders, in the borough of Sayre, and that he had no license for that purpose:

That while he was a resident himself of the borough of Sayre, he had no place of business in that borough.

" Under the second section of the act of April 3, 1851, the borough authorities have the right to make all needful regulations respecting markets, and market days; the hawking, peddling of market produce, and other articles in the borough, and for inspection, measurement or weighing of cord wood, hay, coal and other articles, sold or offered for sale in the borough. To make all needful regulations. That is, they can regulate the trade and the traffic mentioned in this article. Ordinances of this kind must be reasonable. It should not be oppressive. It should be lawful and constitutional. It should not be in restraint of trade, nor in prohibition of it. If it is, then it is the duty, as we believe, of this court so to pronounce it.

" This defendant is charged with the sale of groceries in the village of Sayre without a license. This ordinance provides this: That in order to sell groceries under the provisions of this ordinance, for dealers in dry goods, notions, groceries, provisions, teas, coffees, spices, etc., three dollars per day, $15.00 per week. It is in evidence that the sales of Walker & Co. amount to $500 per month. According to this license the tax upon them per month, according to this ordinance, would be $60.00 or 12 per cent upon all the goods that they sold in the borough. [If he is a permanent dealer, and the evidence is that he has been engaged in delivering goods in this locality for the last 12 years, and long before this borough was organized; the evidence being that it was organized sometime in March or February last; that he has continued during the last 12 years, and he is still selling goods, claiming the right to do so. If he is a permanent dealer, and is permanently engaged in this business, it will cost him per year the sum of $780. Is this in restraint of trade? Is it a fair trade regulation? Or was it as virtually admitted by the counsel who argued the case on the part of the plaintiff when he said if people could not afford to pay this tax, they could keep out. Is it in restraint, and prohibition of trade? Because persons who reside in this borough, by taking out a mercantile license, have a right to trade without paying anything at all, while those who reside out of it, unless they have a place of business,

and pay the mercantile tax in addition, must, if they engage
in the sale of groceries, pay the sum of $3.00 per day, $15.00
a week, $60.00 a month, and $780 a year. Can this be said to
be a fair trade regulation? Is it not in restraint of trade? In
prohibition of trade? In the judgment of this court a regu-
lation which taxes a man at that rate, it seems to me, is clearly
intended for the purpose of restraining trade, and prohibiting
trade instead of regulating it, and that such an ordinance is
void.] [2]

" [It has been argued to this court, that there is no power in
this court to restrain a municipality from putting any amount
of tax upon those who desire to deal within its corporate lim-
its. That they themselves are the sole judges; that they may
fix the tax at $3.00 a day or $300. That they are to be the
sole judges, and that this court has no power to pass upon an
ordinance so declared. That if the people of a municipality
will stand it, that the courts of this commonwealth have no
power whatever to control the municipality in relation to the
restraint of trade. We believe, gentlemen, that such is not the
law.] [4] If it is the Supreme Court must say so, before we
will so hold.

" The fact that Towanda borough or any other municipality
has an ordinance which is oppressive, illegal, unjust, and in
restraint of trade is no justification for Sayre. Sayre borough
and this ordinance must stand upon its own merits. It must
stand or fall upon its reasonableness. Is it reasonable, and is
it a regulation of trade? [The people we think have a right,
both as a police regulation, and as a right under the act of
1851, to make a fair regulation, which shall be for the protec-
tion of the people. Not in restraint of trade but in protection
of the people, and in the regulation of business. We believe,
and so hold that they have that right. But when they go be-
yond that, and go so far as to restrain trade, or in other words
as to prohibit trade, then I say that they have exceeded their
authority, and that their acts are null and void.] [3] [We
direct you, gentlemen, in this case to find a verdict for the
defendant.] [1]"

The plaintiff submitted the following points:

" 1. That the ordinance of the borough of Sayre, being an
ordinance regulating fines, and rates of license for hawkers,

peddlers, and traveling merchants, approved on the 13th day of July, 1891, is not in restraint of trade, so far as the same relates to the business in which the defendant was engaged at the time of his arrest. *Answer:* Gentlemen, we refuse so to charge. [5]

"2. That the going from house to house, by any person, not having a place of business in said borough, soliciting orders for the sale of goods, wares or merchandise, either dry goods or groceries, to be afterwards delivered, is a business the regulation of which is a proper police regulation by the authorities of said borough, and the license fee named in such ordinance by said authorities is reasonable and is not in restraint of said business, but is a regulation thereof. *Answer:* We refuse so to charge. [6]

"3. That the uncontradicted evidence in said cause showing that the defendant did go from house to house in the borough of Sayre soliciting orders for goods, wares and merchandise in violation of the ordinances aforesaid, subjects him to the penalty thereof, and the verdict of the jury should be in favor of the plaintiff. *Answer:* Refused. [7]

"4. That under all the evidence in the case the verdict should be in favor of the plaintiff. *Answer:* We refuse this, gentlemen, and direct you to return a verdict for the defendant." [8]

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were (1) directing a verdict for defendant; (2–4) the portions of the charge in brackets; (5–8) answers to plaintiff's points, quoting the points and the answers.

*H. F. Maynard, J. B. Niles, Deloss Rockwell* and *J. C. Horton* with him, for appellant.—The borough had authority to pass an ordinance upon this subject and to fix the amount of the license fee: Warren Borough v. Geer, 117 Pa. 207 ; City of Titusville v. Brennan, 143 Pa. 642; Sharon Borough v. Hawthorne, 123 Pa. 106; Butler's Ap., 73 Pa. 448; Baldwin v. Phila., 99 Pa. 170; Schenley v. Allegheny, 25 Pa. 128; McMaster v. Com., 3 Watts, 292; Kirby v. Shaw, 19 Pa. 258; Sharpless v. Phila., 21 Pa. 174; O'Maley v. Freeport, 96 Pa. 24.

*Rodney A. Mercur* and *D'A. Overton, John C. Ingham* with them, for appellee.—One who sells by sample is not a hawker or peddler: Com. v. Gardner, 133 Pa. 289; Com. v. Farnum, 114 Mass. 270; Com. v. Ober, 12 Cushing, 495; Com. v. Smith, 6 Bush, 603; Com. v. Jones, 7 Bush, 502; Ex parte Siebenhauer, 14 Nev. 365; Rex v. McKnight, 10 B. & C. 734; Kansas v. Collins, 11 Am. & Eng. Corp. Cas. 414; Com. v. Edson, 2 Pa. C. C. R. 382; Com. v. Eichenberg, 140 Pa. 158.

The act of April 13, 1851, does not authorize the passage of an ordinance discriminating against individuals or localities: Sharon v. Golden, 4 Pa. C. C. R. 357; or between residents and nonresidents: Conshohocken v. Fennel, 5 Pa. C. C. R. 65; Easton v. Beef Co., 5 Pa. C. C. R. 68; Sansford Borough v. Brode, 7 Pa. C. C. R. 221; Groh v. Com., 6 Pa. C. C. R. 130; Com. v. Standard Oil Co., 101 Pa. 146.

The ordinance is void because it does not regulate, but actually restrains trade: 1 Dillon, Mun. Corp. 139, 323; Commissioners v. Gas Co., 12 Pa. 321; Kneedler v. Norristown, 100 Pa. 373; Millerstown v. Bell, 123 Pa. 155.

Whether an ordinance was reasonable and consistent with the law or not is a question for the court and not the jury: 1 Dillon, Mun. Cor., sec. 327; Comth. v. Worcester, 3 Pick. 462; Vandine, Petitioner, etc., 6 Pick. 187; Austin v. Murray, 16 Pick. 121; Comth. v. Stodder, 2 Cush. 562; Boston v. Shaw, 1 Metc. 130; Hudson v. Thorne, 7 Paige, 261; Dunham v. Rochester, 5 Cow. 462; Buffalo v. Webster, 10 Wend. 100; Brooklyn v. Breslin, 57 N. Y. 596; Paxson v. Sweet, 1 Green, 196; In re Frank, 52 Cal. 606; Comth. v. Gas Co., 12 Pa. 318; Kneedler v. Norristown, 100 Pa. 373; Pittsburgh's Ap., 115 Pa. 4; Millerstown v. Bell, 123 Pa. 155; Livingston v. Wolf, 136 Pa. 519.

The appellee being a resident of this state, and his employers residents of the state of New York, the question of interstate commerce arises. The regulation of this matter, as has been decided by a long line of authorities, is exclusively in the congress of the United States, and any ordinance passed by municipal authorities restricting the right is invalid: Robbins v. Shelby Co. Taxing District, 120 U. S. 489; Leloup v. Port of Mobile, 127 U. S. 640; Asher v. Texas, 128 U. S. 129; Stoutenburgh v. Hennick, 129 U. S. 141; Leisy v. Hardin, 135 U.

S. 100; Pullman Co. v. Penna., 141 U. S. 18; Ex parte Stockton, 33 Fed. Rep. 95; Ex parte Kimmel, 41 Fed. Rep. 775; Re Albert H. White, 43 Fed. Rep. 913; Ex parte Spain, 47 Fed. Rep. 208; Re Chas. D. Nichols, 48 Leg. Int. 474; Rothermel v. Meyerle, 136 Pa. 250.

OPINION BY MR. JUSTICE WILLIAMS, April 18, 1892:

The business of peddling has been treated as a proper subject for police regulation and control in this state since 1784. The legislature has forbidden it to all unlicensed persons, and has prescribed the conditions on which licenses may be obtained from the courts. The necessity for such legislation is a question for the lawmakers. The validity of any particular statute, relating to the subject, is a question for the courts. The act of 1784, and the supplementary acts relating to the business of peddling, have been held to be valid, as an exercise of the police power, in many cases, among the more recent of which are Warren Borough v. Geer, 117 Pa. 207; Borough of Sharon v. Hawthorne, 123 Pa. 106; Commonwealth v. Gardner, 133 Pa. 284; Titusville v. Brennan, 143 Pa. 642. By the organization of a city or borough within its borders, the state imparts to its creature, the municipality, the powers necessary to the performance of its functions, and to the protection of its citizens in their persons and property. The police power is one of these. Ordinances of cities and boroughs, passed in the legitimate exercise of this power, are therefore valid. An ordinance prohibiting the business of peddling within the municipal limits, without a license from the proper municipal officer, would seem to be as clearly justified by the police power as a statute prohibiting the same business throughout the commonwealth. But it is very clear that a police regulation must be directed against the business or practice that is harmful, not against one or some of the persons who may be engaged in it. The laws of the state are so framed. They are directed against the business of peddling. The ordinances of cities and boroughs must, in order to be supported as an exercise of the police power residing in the municipality, be directed in like manner at the business. If a statute, or a municipal ordinance, is in reality directed only against certain persons who are engaged in a given business, or against certain commodities, in such manner as to dis-

criminate between the persons who are engaged in the same trade or pursuit, in aid of some at the expense of others, such statute or ordinance is not a police, but a trade regulation; and it has no right to shelter itself behind the police power of the state or the municipality.

A law that should prohibit all persons peddling goods manufactured or produced in other states, and permit the same persons to peddle goods of the same character manufactured or produced in this state, would be a trade regulation discriminating between the productions of this and sister states, and would be incapable of enforcement, because in violation of the constitution of the United States. So a law that should forbid the court to grant a peddler's license to any person resident in any other state, but should authorize the granting of licenses to citizens of this state, would be bad for the same reason. When the state creates a city or borough it cannot confer upon the municipality powers that the state does not possess. It cannot give its creature immunity from the settled limitations that bind its own action. The municipality remains a part of the state after its creation, as truly as the town or village was a part of the state before it acquired a corporate character. Only in matters of local government is its situation changed. It can have no better right to adopt discriminating trade regulations than the state has.

We come now to consider the ordinance on which this case depends. It professes to prohibit all persons from engaging in the business of peddling or selling goods from house to house, by sample or otherwise, without a borough license, and it fixes the price of a license at a figure that makes, as it was evidently intended to make, the ordinance amount to prohibition. So long, however, as it bears upon all persons impartially, it may fairly claim to be a police regulation intended to destroy a business that was regarded as injurious; but at the end of the prohibiting section of the ordinance a proviso may be found which exempts all residents of the borough of Sayre from its operation. The proviso converts the police regulation into a trade regulation. The ordinance, taken as a whole, does not prohibit an injurious business, but injurious competition. That the resident dealer and peddler may enjoy a larger trade, the nonresident peddler is shut out. If the borough authorities

may lawfully regulate the business of peddling for the benefit of residents, we see no reason why they may not lay their hands in like manner on every department of trade and of professional labor, and protect the village lawyer and doctor as well as the village grocer and peddler.

We are reminded by the appellant that this ordinance is like that which came into notice in Warren Borough v. Geer, supra; and it is urged that the question now under consideration ought, therefore, to be regarded as ruled by that case. That case was well decided on the only issue presented by it.

The plaintiff set out in the declaration the ordinance of the borough, and charged that the defendant had violated it by canvassing from house to house within the borough. The defendant demurred, thus admitting the acts charged, and denying the power of the borough to require one engaged in canvassing to take a license. The court below held that the defendant was entitled as of common right to pursue his business, and that the borough was without the power to forbid it. The question came to this court in the form that it had been disposed of in the court below, as a question of power in the borough to require a license from peddlers and canvassers, and we held that the power existed under the act of incorporation, and under the general borough law of 1851. Our brother GREEN, who delivered the opinion of this court, stated the point in controversy thus : " The only question, therefore, is, whether the borough of Warren possesses, by either express grant or necessary implication, the right to enact the ordinance," forbidding the exercise of defendant's employment without a license. We adhere to the doctrine of that case. The present question is whether, under the pretence of police control, trade may be regulated in the interest of resident dealers by making the same business a lawful one to all who live on one side of a municipal line, and an unlawful one to all who live on the other side. We are very clear in our convictions that this cannot be done, and for this reason the judgment is affirmed.