## South Whitehall Township v. Grim

*Robert V. Ritter*, for plaintiff.
*Orrin E. Boyle*, for defendant.

HENNINGER, P. J., April 15, 1958.—Defendant was fined for violating an ordinance of the second class township of South Whitehall by bringing into the township garbage and inflammable rubbish and dumping it in the township. The record of the fining justice of the peace has been brought into this court by certiorari to determine the authority of the township supervisors to enact such an ordinance.

The ordinance in section 1 defines terms, in section 2 prohibits dumping except at places designated by the supervisors, in section 3 provides for permits, describes permissible vehicles, prohibits scattering of refuse along the highways, provides for revocation of permit in case of violation and in section 6 provides a penalty of $5 for each offense.

Sections 4 and 5, which are the subject of this litigation, provided as follows:

"Section 4. It shall be unlawful for any person to dump anywhere in the Township limits, garbage or inflammable rubbish and refuse brought or collected from places outside of the Township limits.

"Section 5. It shall be unlawful for any person who owns, leases or is in anyway in control of land in the Township to allow any person to dump, on said land, garbage or inflammable rubbish or refuse brought or collected from places outside the Township limits."

Defendant admittedly collected garbage and inflammable material from outside the township and dumped it within the borough. He contends that he cannot be held under the ordinance because, he avers, the sections under which he has been fined are arbitrary, unreasonable and discriminating and in violation of the Constitution of Pennsylvania. In his brief, defendant cites Kurtz v. Pittsburgh, 346 Pa. 362, and specifies as the constitutional provision being violated article III, sec. 7, of the Constitution of Pennsylvania which provides that the General Assembly shall not pass any local or special law in a detailed number of instances.

The township in its brief has cited many cases to the effect that this section relates to the General Assembly and does not apply to the ordinances of municipalities: Taylor v. Philadelphia, 261 Pa. 458; Klingler v. Bickel, 117 Pa. 326.

Be that as it may, the township, deriving all its powers from the General Assembly, must exercise them solely as granted: Sayre Borough v. Phillips, 148 Pa. 482, 489. That means that the power of dealing with refuse, which is granted the township as within its police power (Scibilia v. Philadelphia, 279 Pa. 549, 558; Bandos v. Philadelphia, 304 Pa. 191, 192; Kunz v. Titusville, 373 Pa. 528, 532), must be exercised for purposes of public health and not to work out any particular economic philosophy of the supervisors: Sayre Borough v. Phillips, supra, 490.

We inquire, therefore, first whether the ordinance is within the authority of the supervisors and second, whether the questioned sections are valid exercises of that authority.

The authority of the supervisors to enact an ordinance upon the subject is contained in clause VIII of section 702 of the Second Class Township Code of May 1, 1933, P. L. 103, as variously amended, 53 PS §§65702, 65708, which reads, in small part, as follows:

"The corporate powers of townships of the second class shall be exercised by the township supervisors. . . . they shall have power . . . To regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township. To prohibit accumulations of ashes, garbage, rubbish and other refuse materials upon private property, including the imposition and collection of reasonable fees and charges for the collection, removal and disposal thereof."

It is interesting and perhaps significant that the language "regulate or prohibit" is stronger than that used in any other statute referring to the powers of municipalities over disposal of refuse, although the power to "regulate" necessarily implies the power to "prohibit" except as permitted in the regulations: Kovacs v. Cooper, 336 U. S. 77, 85.

Since the act of assembly above quoted permits the supervisors to regulate or prohibit the dumping of refuse within the township, is the prohibition against bringing refuse into the township for dumping a valid health measure within the township's police power or a trade regulation beyond the scope of their authority?

The Supreme Court has sanctioned strict measures in relation to refuse. In Terenzio v. Devlin, 361 Pa. 602, the Supreme Court recognized the principle, at page 605, that for class legislation to be constitutional, the classification must be reasonable, necessary and founded upon a real distinction, citing Kurtz v. Pittsburgh, supra. Nevertheless, it was held that an ordinance providing for free collection of garbage from restaurants was valid although other commercial establishments, such as bakeries, grocery stores and markets were forced to provide their own garbage disposal.

In affirming per curiam the decision of the Court of Common Pleas of Butler County in Butler v. Nuth, 361 Pa. 484, the Supreme Court, while holding that the City of Butler was not required to protect defendant's exclusive right to collect garbage for hire, nevertheless impliedly approved the granting of such a contract.

We note that the sections of the ordinance under attack seek to accomplish just one thing, namely, the protection of South Whitehall from becoming the dumping ground for refuse originating outside the township. There is nothing at all in the ordinance which favors residents of the township as against others except protecting them from a deluge of garbage from other sources. Anyone, regardless of his residence, may, subject to regulations conceded to be reasonable, engage in the conduct of the business of gathering, transportation and disposal of refuse within the township. That distinguishes this case from cases like Sayre Borough

v. Phillips, supra, and many others in which an attempt was made to favor insiders against outsiders. In our case there is no such distinction. Persons, regardless of residence, are permitted to gather and dispose of refuse within the township; residents as well as nonresidents are forbidden to bring refuse into the township. We find, therefore, that there is no discrimination as to persons.

May a township regulate the quantity of refuse that may be dumped within its jurisdiction? Surely there is a relation between the amount of refuse and the likelihood of its becoming a menace to health and safety. We need not belabor that point.

If the township had not the right to limit the quantity of refuse and could be compelled either to prohibit all dumping or to accept all refuse, we would have either the impossible situation of no provision whatsoever for disposal of refuse or the intolerable situation of ash and garbagemen singling out a likely spot and compelling that community to accept refuse for miles around.

South Whitehall Township is a suburban community perhaps evenly divided between built up and rural areas. It contained (1950 census, now obsolete because of rapid later suburban building boom) a population of 5,600 persons and is bordered on the east by the City of Allentown with a population of 106,000 and the Township of Whitehall with 11,000 population. It can readily be seen that if a municipality cannot protect itself from outside refuse, it might soon be swamped.

The township ordinance seems to be very fair. It accepts responsibility for its own refuse and merely asks adjoining municipalities to accept a similar responsibility for theirs. There is no problem of trade or commerce involved, but purely one of health. For health purposes, the classification between refuse originating

in the township and that from the rest of the world seems entirely reasonable and not discriminatory.

Defendant does not claim to be a person engaged in the business of feeding garbage to animals, so we need not decide the impact of the Act of June 19, 1953, P. L. 279, 3 PS §§452.1 to 452.15, upon the right of a township to exclude garbage properly transported to a licensed garbage feeding plant.

Now, April 15, 1958, defendant's exceptions to the record of the justice of the peace in above captioned action are overruled and dismissed and the judgment of said justice is affirmed at defendant's costs.